IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD FERRY,

    Plaintiff,

v.

KEVIN DOOHAN, Washington County
Community Corrections (WCCC)
Post-Prison Supervision Officer;
JOE SIMICH, WCCC, Assistant
Director; STEVE BERGER, WCCC
Director; MICHAEL WU, Oregon
Board of Parole and Post-Prison
Supervision (BPPPS), Chair;
and JOHN AND JANE DOES, 1-20,

    Defendants.

Case No. 3:18-cv-00153-AC

OPINION AND ORDER

HERNANDEZ, Judge.

    Plaintiff brings this civil rights action *pro se*. Currently before the Court is the matter of the Temporary Restraining Order (ECF No. 5) Plaintiff's request for preliminary injunction (ECF No. 1), Defendant Michael Wu's Motion for Dissolution of Temporary Restraining Order and Opposition

1 - OPINION AND ORDER -

to Preliminary Injunction (ECF No. 11), and Respondent Washington County on Behalf of Defendants Steve Berger, Joe Simich and Kevin Doohan's Motion for Dissolution of Temporary Restraining Order and Objection to Preliminary Injunction (ECF No. 13). For the reasons that follow, the Court DISSOLVES the Temporary Restraining Order and DENIES a preliminary injunction.

## BACKGROUND

Plaintiff is currently on post-prison supervision ("PPS") from a Washington County Circuit Court conviction on charges of Sexual Abuse in the First Degree and Sexual Abuse in the Third Degree. Plaintiff's Complaint alleges he was released from prison on September 13, 2016, with his PPS scheduled to expire on June 11, 2020.

On August 8, 2016, in anticipation of Plaintiff's release from incarceration to PPS, the Oregon Board of Parole and Post-Prison Supervision (the "Board") issued an Order mandating the conditions of Plaintiff's supervised release. The Order includes a standard set of supervision conditions referred to as "Sex Offender Package A," as required by Or. Rev. Stat. § 144.102(4)(b).

The mandatory supervision conditions included in the Board's Order include two that reference polygraph testing. First, the Order requires Plaintiff to "enter into and complete[] . . . a sex offender treatment program approved by the Board, supervisory authority, or supervisory officer." The sex offender treatment program "may include polygraphs and plethysmograph testing." Second, the Order requires "[p]articipation in random polygraph examinations to obtain information for risk management and treatment." The results of polygraph examinations under this condition "may not be used as evidence in a hearing to prove a violation of post-prison supervision." The Order also

contains conditions prohibiting Plaintiff from having contact with minors, including Plaintiff's minor son.

The last page of the Order advised Plaintiff that he could seek administrative review within 45 days of the date he signed or received the Order. It further advised Plaintiff that once he received an administrative decision, he could then seek judicial review with the Oregon Court of Appeals. Plaintiff did seek administrative and judicial review, but only as to other conditions of his release; Plaintiff did not challenge the conditions related to polygraph examinations.

Plaintiff was assigned to Parole Officer Kevin Doohan on May 12, 2017. Defendant Doohan directly supervised Plaintiff through September 29, 2017. On or about May 11, 2017, Doohan and Plaintiff met to conduct a transitional meeting after Plaintiff's release from the Washington County Jail. At that meeting, Doohan and Plaintiff discussed the Board's August 8, 2016, Order. Both Doohan and Plaintiff signed a copy of the Order. At the same meeting, Doohan also reviewed a Definition of Terms Regarding Contact with a Prohibited Person and a Polygraph Examiner Information. Doohan and Plaintiff signed copies of each.

On September 1, 2017, Plaintiff filed a Motion for Relief From Polygraph Testing and Invocation of Right to Remain Silent with the Board. The Board denied Plaintiff's Motion in a September 20, 2017, Order signed by Defendant Wu (who is no longer a member of the Board).

On January 25, 2018, Plaintiff filed his Complaint in this action, seeking an Emergency Temporary Restraining Order, [Preliminary] Injunction, and Permanent Injunction. Plaintiff sought a temporary restraining order enjoining Defendants from conducting a polygraph examination scheduled for February 6, 2018, as well as preliminary and permanent injunctions enjoining

Defendants from compelling Plaintiff to participate in any further polygraph tests as a condition of his PPS. Plaintiff also seeks money damages.

In his Complaint, Plaintiff alleges that at the May 11, 2017, meeting with Doohan, Plaintiff requested and received an Interstate Compact Agreement application to apply to transfer his PPS to the State of Washington. Plaintiff alleges Doohan told him that while Plaintiff waited for his application to be processed, it would "look good" for him to get started on treatment programs and take a full disclosure polygraph examination.[1]

Plaintiff alleges he was scheduled to take the polygraph examination on June 16, 2017, but that Doohan cancelled it so he could provide Plaintiff's entire file to the polygrapher before the examination was conducted. Plaintiff objected to the cancellation, and his Complaint then sets forth the alleged contents of an extensive email exchange with Doohan. Eventually, Doohan sent an email to Plaintiff stating, "Yes, if you test as deceptive that will put your transfer [to Washington] on hold indefinitely." Plaintiff alleges Doohan also threatened Plaintiff with further jail time if Plaintiff refused to participate in the polygraph, and that in another email, Doohan stated, "If you test deceptive on a maintenance polygraph you will not go to jail until we know for sure why you tested deceptive."

Plaintiff alleges he participated in a full disclosure polygraph on July 7, 2017. The examiner concluded Plaintiff was deceptive in answering four questions about his past sexual activities, two

---

[1] The Polygraph Examination Information form signed by Plaintiff describes a full disclosure examination as follows:

> The Full Sexual History Disclosure examination is utilized to explore and extract from the sex offender their involvement in sexual behavior. The sexual history information can be helpful in facilitating treatment for the offender and assessing risk factors.

relating to the victims involved in Plaintiff's conviction and two as to general contact with minors. Plaintiff's PPS was not revoked as a result of the polygraph examination. In fact, Doohan attests that in the time he supervised Plaintiff, Doohan never referred Plaintiff for a violation of his release conditions, and never recommended any sanction against Plaintiff.

On February 5, 2018, this Court issued a Temporary Restraining Order enjoining Defendants from conducting any polygraph examination of Plaintiff until further order. The Court entered the Order based upon the allegations of Plaintiff's Complaint that Defendant Doohan threatened Plaintiff with further jail time if Plaintiff refused to participate in the polygraph examination, and that Doohan also threatened Plaintiff with further jail time if he produces a "deceptive" polygraph examination result.

Due to Plaintiff's *pro se* status, the Court transmitted the Order to the offices of the Washington County Counsel and the Oregon Attorney General. The matter was set for hearing, and on February 14, 2018, Assistant County Counsel Kimberly Stuart and Assistant Attorney General Tracy White appeared. The Court directed Plaintiff to properly serve Defendants with process, continued the Temporary Restraining Order, and set a briefing schedule and further hearing on the matter for February 28, 2018. On February 23, 2018, Defendant Wu filed his Motion for Dissolution of the Temporary Restraining Order and Opposition to Preliminary Injunction, and Defendants Steve Berger, Joe Simich, and Kevin Doohan (the "Washington County Defendants") filed their Motion for Dissolution of Temporary Restraining Order and Objection to Preliminary Injunction. On February 28, 2018, the Court heard argument from the parties. The Court dissolved the Temporary Restraining Order, and denied Plaintiff's request for preliminary injunction, with this opinion to follow.

5 - OPINION AND ORDER -

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.*, at 20 (emphasis added); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In the Ninth Circuit, assuming the other elements of the Winter test are met, a "sliding scale" approach may be taken and "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies*, 632 F.3d at 1131–35 ("'serious questions' approach survives Winter when applied as part of the four-element *Winter* test"). Where, as here, the plaintiff seeks a mandatory injunction that goes beyond maintaining the status quo, he must demonstrate that the facts and law clearly favor an injunction. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015); *see also Am. Freedom Def. Initiative v. King Cty.*, 796 F.3d 1165, 1173 (9th Cir. 2015) (mandatory injunctions are disfavored and will not be entered in doubtful cases).

## DISCUSSION

Plaintiff alleges the PPS conditions requiring him to submit to polygraph examinations violate his rights against self-incrimination under the Fifth and Fourteenth Amendments. Defendant Wu argues Plaintiff is not entitled to injunctive relief because no civil rights claim can be brought based on the right to remain silent without a criminal charge, because Plaintiff's claims are not ripe, because claim preclusion bars Plaintiff's claims, and because Wu is protected by absolute and

qualified immunity. The Washington County Defendants assert similar arguments, and also contend that Plaintiff's claims are barred by the *Heck* doctrine. Because the Court finds Plaintiff failed to establish he is entitled to a preliminary injunction under the *Winter* factors, the Court does not address Defendants' additional arguments at this time.[2]

## I. Likelihood of Success on the Merits

"The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1 (1964), requires that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.'" *Chavez v. Martinez*, 538 U.S. 760, 765 (2001) (quoting U.S. Const., Amdt. 5) (emphasis in original). "Thus, the Fifth Amendment provides a right against compelled self-incrimination, but that right only applies when a compelled statement is used against a defendant in a 'criminal case.'" *United States v. Hulen*, 879 F.3d 1015, 1018 (9th Cir. 2018) (citing *Chavez*, 538 U.S. at 766-67; *Stoot v. City of Everett*, 582 F.3d 910, 922-23 (9th Cir. 2009)).

In general, the Fifth Amendment is not self-executing: "a witness . . . ordinarily must assert the privilege rather than answer if he desires not to incriminate himself." *Minnesota v. Murphy*, 465 U.S. 420, 435 (1984). In *Murphy*, the defendant was subject to a probation condition requiring that he participate in a treatment program for sex offenders, report to his probation officer as directed, and be truthful with the probation officer "in all matters." *Id*. at 422. In his treatment program, the defendant admitted a prior rape and murder. Those admissions were communicated to the probation

---

[2]With respect to the County Defendants' *Heck* argument, the Court notes that a 42 U.S.C. § 1983 preemptive challenge to the conditions of parole outside the context of a revocation proceeding is not necessarily barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Lee v. Jones*, Case No. 05-789-MO, 2006 WL 44188, at *4 (D. Or. Jan. 9, 2006) (parole conditions, as opposed to the fact of parole itself, are not properly considered part of the parolee's sentence, and because they do not challenge the fact or length of parole, challenges thereto are not barred by *Heck*).

7 - OPINION AND ORDER -

officer, and upon questioning, the defendant did not invoke his right against self-incrimination and admitted the crimes to the probation officer. In the subsequent criminal prosecution, the defendant sought to suppress the admissions on the ground that his statements had been compelled by the probation condition, and were entitled to Fifth Amendment protections.

The Court in *Murphy* considered whether to excuse the defendant's failure to assert the privilege against self-incrimination on the basis of the so-called "penalty exception," which had been applied in cases where "the State not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions capable of forcing the self-incrimination which the Amendment forbids." *Id*. at 434 (citation omitted). The Court found there was no evidence that the defendant would have been penalized for exercising his Fifth Amendment privilege; the probation condition "proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution." *Id*. at 437. The Court explained, however, how the penalty exception could apply to a probationer:

> If the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Id*. at 435 (fn. omitted) (emphasis supplied). The Court further noted that "a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination." *Id*. at 435, fn.7

8 - OPINION AND ORDER -

In *Hulen*, the Ninth Circuit recently stated that "[i]t is well established that parole revocation is not part of a criminal prosecution." *Hulen*, 879 F.3d at 1919 (citing *Standlee v. Rhay*, 557 F.2d 1303, 1306 (9th Cir. 1997) (additional citation omitted); *see also Murphy*, 466 U.S. at 445 fn. 7 ("[a]though a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding"). Instead, a revocation proceeding is "part of the 'matrix of punishment' arising out of the original crime." *Hulen*, 879 F.3d at 1020 (citing *United States v. Soto-Olivas*, 44 F.3d 788, 792 (9th Cir. 1995)). The defendant in *Hulen* was serving a supervised release term that included as a condition of release the requirement that he participate in sex-offender treatment. In the course of treatment, he informed his treatment provider that he failed to comply with his treatment program by, *inter alia*, engaging in sexual activity. The provider informed the supervising officer that Hulen would be terminated from treatment. The officer then filed a petition to revoke supervised release on the basis of being terminated from treatment, which the district court granted. Hulen appealed, arguing that the district court violated his right against self-incrimination by relying on his admissions to his treatment provider to revoke his release. The Ninth Circuit held that, because a proceeding to revoke supervised release is not a "criminal case" for the purposes of the Fifth Amendment, the right against self-incrimination did not prevent the use of his admissions to revoke his supervised release. *Id*. at 1021-22.

In *Hulen*, the court distinguished a prior Ninth Circuit case, *United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005). There, the defendant was convicted of possessing child pornography and sentenced to five years probation. One of the probation terms required him to participate in a sex offender treatment program that would subject him to mandatory periodic and random polygraph examinations. Antelope refused to submit to the polygraph examinations because he did not want

9 - OPINION AND ORDER -

to detail his sexual history out of fear he would be charged with new crimes for past actions. *Antelope*, 395 F.3d at 1135. The district judge revoked probation based on the refusal to submit to a polygraph, and sentenced Antelope to a term of imprisonment, followed by three years of supervised release. The court again imposed the sex offender treatment requirement as a condition of his supervised release. Antelope again refused the polygraph, asserting his Fifth Amendment rights. The court then revoked his supervised release and sentenced him to an additional prison term.

On appeal, the Ninth Circuit held that Antelope's claim was "ripe" because he had been incarcerated for his refusal to comply with the polygraph condition, and concluded that the revocation of his probation and supervised release violated his Fifth Amendment right against self-incrimination. *Id*. at 1133, 1139. The court discussed at some length Antelope's fear that disclosure would lead to future prosecution, as well as the counselor's statements that he would most certainly turn over evidence of past sex crimes to the authorities, and that he had reported his clients' crimes in the past, which led to additional criminal convictions. In *Hulen*, the Ninth Circuit relied upon this discussion to distinguish *Antelope*, stating:

> [I]n *United States v. Antelope*, a probationer refused to detail his sexual history out of fear that he would be charged with new crimes for past actions. We noted that we had "no doubt," based on the facts of the case, "that any admissions of past crimes would likely make their way into the hands of prosecutors." We therefore upheld the probationer's right to refuse to detail his sexual history because the answers "would incriminate him in a pending or later criminal prosecution." Thus, our analysis was driven by the threat of a new prosecution. We did not address the question of whether the Fifth Amendment would be implicated by an admission leading to the revocation of supervised release.
>
> If an effort had been made to charge and convict Hulen for a new crime based on his admissions, he would presumably be able to claim the benefit of the Fifth Amendment. That is not the case before us, however. The right of self-incrimination did not prevent the use of his admissions to revoke his supervised release.

*Hulen*, 879 F.3d at 1020-21 (internal citations omitted).

Here, Plaintiff makes no allegations that he is in fear of future prosecution for new crimes if he participates in the polygraph examinations. As such, the mere threat of revocation for refusing to take a polygraph examination does not violate Plaintiff's Fifth Amendment right against self-incrimination. In fact, Plaintiff affirmatively alleges that he completed the full disclosure examination required by the sex offender treatment program. As noted, even though the examiner found some of his answers in that examination deceptive, Plaintiff's release was not revoked on that basis. Moreover, Oregon law provides in any event that, where a defendant is required as a condition of post-prison supervision to participate in "random polygraph examinations to obtain information for risk management and treatment," the results of those polygraphs "may not be used in evidence in a hearing to prove a violation of parole." Or. Rev. Stat. § 104.270(4)(b)(J).

Finally, even in *Antelope*, the Ninth Circuit noted a distinction applicable to Plaintiff's situation. The court discussed the Supreme Court's decision in *Chavez*, supra, in which a plurality of the Court held that a defendant police officer was entitled to qualified immunity in a 42 U.S.C. § 1983 action for damages alleging violation of the plaintiff's Fifth Amendment right against self-incrimination where the officer questioned the plaintiff and obtained admissions of criminal liability, but no criminal charges were ever pursued. The Ninth Circuit noted that "[c]ritical to the reasoning of all six justices was the simple principle that the scope of the Fifth Amendment's efficacy is narrower when used as a sword in a civil suit than when used as a shield against criminal prosecution" and "[w]ere Antelope to turn the tables and sue the government, *Chavez* would direct our inquiry to the 'core constitutional right'" such that an argument that the government has the right to compel a defendant to incriminate himself, prosecute him, and force him to litigate the

admissibility of each piece of evidence in future criminal proceedings might prevail. *Antelope*, 395 F.3d at 1141. Thus under *Chavez*, in the absence of criminal prosecution, Plaintiff cannot obtain damages under § 1983 for the alleged violation of his Fifth Amendment self-incrimination rights because no criminal charges have been pursued against him. *See also Farmer v. Youhas*, 525 Fed. Appx. 547, at *1 (9th Cir. 2013) (district court properly granted summary judgment in civil rights case on Fifth Amendment claim where plaintiff presented no evidence that statements he made during polygraph examination were used against him in a criminal proceeding) (citing *Chavez*, 538 U.S. at 766-69). Accordingly, Plaintiff has not demonstrated a likelihood of success on the merits or a serious questions going to the merits of his Fifth Amendment self-incrimination claims.

## II. Irreparable Harm

As noted, Oregon law prohibits the use of answers obtained in the course of a polygraph examination required as a condition of post-prison supervision in a revocation proceeding. Moreover, the Court finds no evidence of circumstances such as occurred in *Antelope*; there is no indication that any admission of past crimes would inevitably result in a criminal prosecution against Plaintiff. As such, the Court finds Plaintiff does not face irreparable harm.

## III. Balance of Equities & Public Interest

In reviewing the balance of equities between the parties, the Court finds the balance tips slightly in favor of the Defendants. The government has a strong interest in overseeing the post-prison supervision of criminal defendants and in administering sex offender treatment. Both are important to the safety of the public, whose interest in this case coincides with the Defendants. Plaintiff, meanwhile, has an interest in remaining safe and to not make self-incriminatory statements.

As discussed above, however, the Fifth Amendment self-incrimination protections are not implicated. Accordingly, the balance of equities and public interest weigh against Plaintiff.

## **CONCLUSION**

For these reasons, the Court finds Plaintiff is not entitled to a preliminary injunction. The Court GRANTS Defendant Wu's Motion for Dissolution of Temporary Restraining Order (ECF No. 11) and the Washington County Defendants' Motion for Dissolution of Temporary Restraining Order (ECF No. 13) and DISSOLVES the Temporary Restraining Order, and the Court DENIES Plaintiff's request for Preliminary Injunction.

IT IS SO ORDERED.

DATED this 2 day of ~~February~~ March, 2018.

Marco A. Hernandez
United States District Judge